O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:      Attorneys **NOT** Present for Defendant:

**Proceedings:**     IN CHAMBERS (No Proceedings Held)

## I. INTRODUCTION

This case involves a dispute over whether Defendant American Alternative Insurance Corporation's ("AAIC") insurance policy creates a "duty to defend" Plaintiffs against a civil suit in California state court. AAIC refuses to defend Plaintiffs, and Plaintiffs have sued in this Court alleging breach of contract and breach of the duty of good faith. Defendant filed a counterclaim for declaratory relief, asking the Court to determine that it has no duty to defend or to indemnify Plaintiffs. Plaintiffs now move for partial summary judgment that Defendant does have the duty to defend.

AAIC argues that it does not have a duty to defend because the policy covers only suits seeking "damages," and the underlying suit does not seek "damages." Even if that suit does seek "damages," AAIC also argues, the types of damages sought are not insurable under California law. Finally, AAIC contends that even if the Court finds it has a duty to defend, it has denied coverage based on a genuine belief that no coverage applies and so the Court should dismiss Plaintiffs' claim for breach of the duty of good faith.

The Court holds that the underlying action potentially seeks insurable "damages" and therefore GRANTS Plaintiffs' motion for summary adjudication.[1] The Court will not rule on the merits of the bad faith claim at this time.

---

[1] Dkt. No. 25.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

## II. FACTUAL BACKGROUND

### A. The Underlying Suit

The principal facts are undisputed.[2] Plaintiff Los Osos Community Services District ("the District") was formed in 1998 to provide, among other things, water, wastewater, and drainage services to the community of Los Osos. Pls.' Statement of Uncontroverted Material Facts ("SUF") ¶ 1. Individual Plaintiffs Steve Senet, John Fouche, Chuck Cesena, Lisa Schicker, and Julie Tacker include current and former members of the District's Board of Directors. SUF ¶ 2.

In December 2005, a group called Taxpayers Watch—whose members live and pay taxes in the District—and two individual taxpayers from the District filed a first amended complaint ("FAC") in a civil action called *Taxpayers Watch, et al. v. Los Osos Community Services District, et al.*, San Luis Obispo County Superior Court, No. CV 050862 ("underlying action"). SUF ¶ 8. The FAC alleges that the District was formed to deal with longstanding water quality problems in Los Osos, and soon after its inception it began laying plans for a wastewater processing facility. FAC ¶ 7. In early 2005, a group of District residents tried to stop the project by placing a proposition called "Measure B" on the ballot. Measure B would have allowed for the change of the facility's location. The District sued to stop the proposition. The San Luis Obispo Superior Court found the measure illegal and barred it from the ballot. FAC ¶ 11. Then on September 27, 2005, Taxpayers Watch's FAC alleges, "a group of disgruntled residents" succeeded in recalling three of the District Board members. FAC ¶ 12.

---

[2] Defendant only contests Plaintiffs' assertions that the underlying suit seeks to recover losses, and that the suit alleges monetary losses. As discussed below in detail, it contends that the third party plaintiffs cannot sue to recover losses, or even allege monetary losses, because"Taxpayers Watch filed suit under [California Code of Civil Procedure (CCP)] § 526 [sic] which does not permit recovery of losses by taxpayer plaintiffs." Def.'s Statement of Genuine Issues ¶¶ 9, 10, 17. This assertion is more properly characterized as a legal argument; it is not a factual issue that must be resolved at a trial.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

The new Board acted quickly to stop the construction of the treatment facility. Among other things, it allegedly dismissed the lawsuit brought to stop Measure B, which by then had reached the state appellate court. FAC ¶ 14. In addition, however, the new Board paid the proposition's proponents — who apparently were allied with the three new members of the Board — "$125,000.00 in one settlement, and additional monies in other settlements, amounting to a total of more than $600,000.00." *Id.* The FAC alleged that this money was paid with a state loan on which the District had defaulted, and that it was "a sham settlement with the Board's cronies. Ultimately, the ratepayers of the District will be responsible for repaying those monies to the state of California." *Id.* The FAC also alleged several other costs resulting from the alleged mishandling of the project, including several millions of dollars in fines, expected liquidated damages claims, and the increased costs of building the treatment facility. FAC ¶ 15. In sum, the *Taxpayers Watch* FAC alleged that "[t]he total amount of money lost due to the recent actions of the District is in excess of $150 million." *Id.*

The FAC asserted causes of action for a writ of mandate under California Code of Civil Procedure ("CCP") § 1085, and for relief under CCP § 526a, a statute allowing taxpayers to sue for "a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, [or] city" of the state. The § 526a claim alleged that the District's work stoppage "will cause express and distinct injury to Plaintiff and its members." FAC ¶ 22. Specifically, it alleged that "the new Board has authorized payment of more than $600,000 to their political supporters . . . ." FAC ¶ 24. For this § 526a cause of action the *Taxpayers Watch* plaintiffs asked the court for an injunction enjoining the work stoppage, and "[f]or a judgment requiring and mandating that each and every one of the District's individual Board members be held personally liable to repay the monies wasted as a result of their thoughtless and wasteful decisions, including return of the $600,000 paid to Measure B proponents in a collusive settlement." FAC Prayer for Relief.

The action was stayed as a result of the District's intervening bankruptcy filing, but in anticipation that the suit would proceed against the individual Board members those Defendants tendered the defense of the FAC to their insurer, AAIC. SUF ¶¶ 8, 11. AAIC denied coverage for the defense of the action, on the basis that it did not seek monetary damages. SUF ¶¶ 12-14.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

In January 2008, the *Taxpayers Watch* plaintiffs filed a Second Amended Complaint ("SAC") that dropped the claim for a writ of mandamus, but added a number of allegations related to the § 526a claim. First, the new complaint asserted that the Board members benefited from the settlement of the Measure B lawsuit. It alleged that the facility's opponents — who, again, evidently were allied with the new Board majority — had filed five lawsuits in 2005, and that in all of the suits the opponents were represented by the law firm of Burke, Williams & Sorenson. SAC ¶ 10. It claimed that when the new Board decided to dismiss the Measure B case that the old Board had filed, it

> declare[d] the Measure B proponents the prevailing party, and [paid] the attorneys for the Measure B proponents (Burke, Williams & Sorenson) $125,000.00 in one settlement, and additional monies in other settlements, amounting to a total of $600,000.00, all to be paid to Burke, Williams & Sorenson. Plaintiffs . . . allege that the new District Board members had personal ties to the organizations that benefitted from these settlements . . . . Further, Plaintiffs allege that the individual Board members benefitted directly or indirectly from these payments to Burke, Williams & Sorenson, because if the District did not pay the settlement monies, either the individual defendants or their organizations would be liable for the payments. . . . Plaintiffs . . . allege that there is no conceivable way to legally allocate the state Revolving Fund monies to settlements with the Board's supporters and former lawyers. Ultimately, the ratepayers of the District will be responsible for repaying those monies to the state of California.

SAC ¶¶ 13-14. The Second Amended Complaint also claimed that the settlement was funded with money from the aforementioned state loan. SAC ¶ 14.

The second new allegation in the Second Amended Complaint concerned the mismanagement of funds. It asserted that the Board members failed to use tax revenue and bond assessment payments to pay a Department of Forestry fire fee of $759,000 and a bond assessment payment of $715,000. Instead, "the majority of the monies had been spent paying Burke, Williams & Sorenson and unbudgeted consultant fees." SAC ¶ 18. To cover the fire fee and bond assessment payment, the complaint alleges, the Board members used $760,000 allocated for another purpose and took out a loan of $716,000.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

SAC ¶¶ 19-22.

The Second Amended Complaint again asked the court "to find the individual members of the Board of Directors . . . personally liable to repay the money disbursed under the sham settlements." SAC ¶ 24. In the alternative, it asked the court to order "that the District obtain the settlement monies from Burke, Williams & Sorenson, and return said monies to the coffers of the District." *Id.* In addition, the SAC asked the court "to find the individual members of the Board . . . personally liable for repayment" of the $760,000 fire payment and the $716,000 bond payment, "both amounts taken in violation of law." SAC ¶ 25. Like the First Amended Complaint, the SAC requested that "each and every one of the District's individual Board members be held personally liable to repay the monies wasted a result of their thoughtless and wasteful decisions . . . ." SAC at p.8. (This catch-all phrase presumably refers, among other things, to the alleged fines assessed on the District, expected liquidated damages claims, and the increased costs of building the treatment facility.) *See* SAC ¶ 16.

After the filing of the Second Amended Complaint, AAIC continued to refuse to defend against the suit. On July 16, 2008, the *Taxpayers Watch* plaintiffs stated in response to a July 11, 2008 interrogatory served on them by the Board members who in this case are seeking insurance coverage that they were seeking "damages" (as that term is defined in the Civil Code[3]) from the Board members, "to wit, for reimbursement of the settlement monies wrongfully paid to Burke, Williams & Sorenson, and for reimbursement of the monies taken unlawfully" to pay for bond payments and fire protection. SUF ¶¶ 19-20. AAIC nevertheless continued to refuse to defend against the suit, but did agree to reimburse Plaintiffs for $5,000 in legal expenses, under the terms of the insurance policy discussed below. SGI ¶ 22.

**B.    The Insurance Policy**

Plaintiffs are insured under AAIC's Special Districts Insurance Policy No.

---

[3] "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." Cal. Civ. Code § 3281.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

SDISSK9100735 (effective July 1, 2005 to July 1, 2006). SUF ¶ 3. That policy states

> We shall pay on behalf of the Insured those sums that the Insured becomes legally obligated to pay as damages because of . . . "wrongful acts" to which this Coverage Part applies. We shall have the right and duty to defend the Insured against any "suit" seeking those damages, even if the allegations are groundless, false or fraudulent. However, we will have no duty to defend the Insured against any "suit" seeking those damages to which this insurance does not apply.

Schemp. Decl. ¶ 4, Ex. 3, p.43. The term "damages" is not defined in the policy.

The policy also provides "[u]p to $5,000 reimbursement to the Insured for legal expenses necessarily incurred by the Insured in defending a claim seeking relief or redress in any form other than monetary damages." *Id.* at Ex. 3, p.46. The parties do not dispute that this policy, and these clauses, apply to this suit.

## III. EVIDENTIARY RULING

Defendant has claimed that the quick response of the *Taxpayers Watch* plaintiffs to the July 2008 interrogatory suggests some kind of collusion between those third party plaintiffs and Plaintiffs in this suit. Eric J. Schindler, Plaintiffs' counsel of record, addressed this accusation in a declaration attached to Plaintiffs' reply memorandum. He stated that the parties in the underlying action "successfully negotiated a stand-still agreement . . . in part to give the parties in this coverage action an opportunity to obtain a ruling on AAIC's duty to defend." Schindler 9/2/08 Decl. ¶ 3. In the last sentence, Schindler stated that the *Taxpayers Watch* plaintiffs "expedited their response to the District's special damages interrogatory to speed" along the process of obtaining a ruling on AAIC's duty to defend. *Id.*

Defendant objects to Mr. Schindler's concluding statement as either lacking personal knowledge or as inadmissible hearsay. The Court sustains Defendant's objection, but only to the last sentence of paragraph 3 of the declaration.

///

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.*  v.  AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

## IV. LEGAL STANDARDS

### A. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248.  The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party.  The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325.  Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'"  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ.  P. 56(e).  Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id*.  Only admissible evidence may be considered in deciding a motion for

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

summary judgment. *Id.*; *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### B.      Interpretation of Insurance Contracts

It is well established that the interpretation of an insurance contract is a question of law for the Court to determine. *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). Courts apply basic principles of contract interpretation to insurance policies with the goal of giving effect to the mutual intention of the parties at the time they signed the policy. *Id.* The California Supreme Court has set forth clear guidelines for the interpretation of insurance policies. As it explained in *AIU Insurance Co. v. FMC Corp*, 51 Cal. 3d 807, 821-22 (1990):

> Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. Such intent is to be inferred, if possible, solely from the written provisions of the contract. The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage," controls judicial interpretation. Thus, if the meaning a lay person would ascribe to contract language is not ambiguous, we apply that meaning.
>
> If there is ambiguity, however, it is resolved by interpreting the ambiguous provisions in the sense the promisor (*i.e.*, the insurer) believed the promisee understood them at the time of formation. If application of this rule does not

Case 2:08-cv-01279-AHM-SS   Document 41   Filed 11/12/08   Page 9 of 18   Page ID #:763

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist. In the insurance context, we generally resolve ambiguities in favor of coverage. Similarly, we generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured. These rules stem from the fact that the insurer typically drafts policy language, leaving the insured little or no meaningful opportunity or ability to bargain for modifications. Because the insurer writes the policy, it is held "responsible" for ambiguous policy language, which is therefore construed in favor of coverage.

Insurance contract interpretation therefore involves a three-step process. First, a court must determine whether the contract language is ambiguous. If it is not, then the contract's "clear and explicit" terms are controlling. However, if an ambiguity exists, then the court must interpret the terms in accordance with the insured's "objectively reasonable expectations." If this fails to resolve the ambiguity, then the ambiguous term is construed against the insurer, *i.e.*, in favor of coverage. *See generally* Croskey, Kaufman, et al., *California Practice Guide: Insurance Litigation* § 4.4 (1999) (explaining the three-step analysis). It is also well-settled that the insurer carries the burden of proving the applicability of a specific policy exclusion. *See Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 406 (1989).

### C. Duty to Defend

A liability insurer owes "a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). The duty to defend is broader than the duty to indemnify, and therefore insurers owe a duty to defend even in cases in which damages are ultimately not awarded. *Id.* If any claim alleged in a lawsuit could be potentially covered under the policy, the insurer is obligated to defend against all claims alleged, even if some of those claims could not even potentially be covered, and even if such non-covered claims predominate. *Id.* at 1084; *Vann v. Travelers Co.*, 39 Cal. App. 4th 1610, 1615 (1995). Conversely, where there is no possibility of coverage, there is no duty to defend. *Waller*, 11 Cal. 4th at 19 (citation omitted). Furthermore, "where the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even when the bare allegations in the

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

complaint suggest potential liability." *Id.* (citations omitted). "To defend immediately, [the insurer] must defend entirely. It cannot parse claims, dividing those that are at least potentially covered from those that are not." *Buss v. Superior Court of Los Angeles County*, 16 Cal. 4th 35, 49 (1997). The duty to defend extends even to even groundless, frivolous, false and fraudulent claims asserted against the insured. *See Horace Mann*, 4 Cal. 4th at 1085.

The determination of whether an insurer owes a duty to defend its insured in a particular lawsuit is made "in the first instance by comparing the allegations of the complaint with the terms of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 (1966). The insurer must also consider any facts extrinsic to the complaint which suggest a possibility that the claim may be covered under the insurance policy. *Id.* "The scope of the duty does not depend on the labels given to the causes of action . . . . instead it rests on whether the *alleged facts or known extrinsic facts* reveal a *possibility* that the claim may be covered by the policy." *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1034 (2002) (emphasis in original); *Cort v. St. Paul Fire & Marine Ins. Co.*, 311 F.3d 979, 983 (9th Cir. 2002). In addition, "if the coverage provisions in any policy of insurance are unclear or the exclusions are ambiguous, so that a reasonable purchaser of the policy would not realize that the risk is excluded and thus would reasonably expect the insurer to furnish a defense, a defense is required." *B & E Convalescent Ctr. v. State Comp. Ins. Fund*, 8 Cal. App. 4th 78, 99-100 (1992). Any doubt as to whether a duty to defend exists is resolved in favor of the insured. *See Vann*, 39 Cal. App. 4th at 1615. Moreover, "[t]he insurer bears a heavy burden to draft exclusionary clauses in clear language comprehensible to lay persons." *Nat'l Auto. & Cas. Ins. Co. v. Stewart*, 223 Cal. App. 3d 452, 457 (1990).

In an action for declaratory relief on the insurer's duty to defend, in order to prevail the insured must prove only the potential for coverage (*i.e.*, facts tending to show that one of the underlying claims *may* be covered under the policy). *See Montrose*, 6 Cal. 4th at 300. In contrast, in order for the insurer to prevail, it must establish, by reference to undisputed facts, that there are no facts that could bring any claim asserted in the underlying action within the scope of the policy's coverage. *Id.; Borg v. Transamerica Ins. Co.*, 47 Cal. App. 4th 448, 455 (1996). "Facts merely tending to show that the claim is not covered, or may not be covered, but [that] are insufficient to eliminate the

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales." *Montrose*, 6 Cal. 4th at 300. Thus, when the insured brings a motion for summary judgment, the initial burden falls on him to establish a potential for coverage. Once the insured has made this showing, the burden is on the insurer to prove the claim is not covered. *See Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998); *Montrose*, 6 Cal. 4th at 300; Croskey, Kaufman, et al., *supra*, § 15:704. Therefore, on a motion for summary judgment, "an unfavorable ruling on the insured's motion does not establish the absence of a defense duty; it merely means that the question whether the insurer must defend is not susceptible of resolution by undisputed facts, but instead must go to trial. In the interim, presumably there continues to exist a potential for coverage and thus a duty to defend." *Montrose,* 6 Cal.4th at 301. On the other hand, a favorable ruling for the insurer conclusively establishes that it has no duty to defend. *Id.*

## V. DISCUSSION

The fundamental issue in this case is whether the relief under CCP § 526a that the *Taxpayers Watch* plaintiffs seek falls within the insurance policy at issue in this case, which states that "[w]e shall pay on behalf of the Insured those sums that the Insured becomes legally obligated to pay as damages because of . . . 'wrongful acts' to which this Coverage Part applies. We shall have the right and duty to defend the Insured against any 'suit' seeking those damages . . . ." The policy does not define "damages" and Plaintiffs assert that the Court must therefore look to its "ordinary and popular" definition. Under that definition, they argue, the facts alleged by the *Taxpayers Watch* plaintiffs in both the First and Second Amended Complaints, and their July 2008 interrogatory answers, make clear that those plaintiffs are seeking damages under CCP § 526a.

Defendant disagrees. First, it argues that CCP § 526a does not and cannot authorize an action for "damages." Second, it argues that even if the third party plaintiffs may seek damages under that statute, any such damages are not insurable under California law. For the reasons explained below the Court holds that the underlying action potentially seeks insurable "damages" under the ordinary definition of that term and therefore GRANTS Plaintiffs' motion for summary judgment.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

### A.    The *Taxpayers Watch* Plaintiffs Potentially Seek "Damages" Under CCP § 526a

In both their First and Second Amended Complaints, the *Taxpayers Watch* plaintiffs brought claims under CCP § 526a. That provision is within a chapter of the California Code of Civil Procedure entitled "Injunction." It provides that

> An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof . . . either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein.

CCP § 526a. The question is whether the claims made under this statute potentially seek "damages" covered by the insurance policy.

Although the text of the statute does not provide for the recovery of monetary damages, the California courts have extended § 526a to allow taxpayers to obtain an order requiring officials to repay wasted funds to the public entity. *See, e.g., Stanson v. Mott*, 17 Cal. 3d 206, 226-27 (Cal. 1976). The state courts have characterized this remedy as one for "damages." *See, e.g., Van Atta v. Scott*, 27 Cal. 3d 424, 449-50 (Cal. 1980) ("While such language clearly encompasses a suit for injunctive relief, taxpayer suits have not been limited to actions for injunctions. Rather, in furtherance of the policy of liberally construing section 526a to foster its remedial purpose, our courts have permitted taxpayer suits for declaratory relief, damages and mandamus." (citations omitted)) (overruled on other grounds); *Humane Soc'y of the U.S. v. State Bd. of Equalization*, 61 Cal. Rptr. 3d 277, 281 (Cal. Ct. App. 2007) (same); *Waste Mgmt. of Alameda County, Inc. v. County of Alameda*, 94 Cal. Rptr. 2d 740, 752 (Cal. Ct. App. 2000) (same).

The California Supreme Court has made clear that when an insurance policy does not define "damages," courts must look to the "ordinary and popular" definition of that

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

term in the absence of evidence that the parties intended it to carry a technical meaning, and implemented their intention by specially crafting policy language. *AIU Ins. Co*, 51 Cal. 3d at 825. There is no such evidence in this case.

The California Supreme Court concluded that "the statutory and dictionary definitions of 'damages' share several basic concepts. Each requires there to be 'compensation,' in 'money,' 'recovered' by a party for 'loss' or 'detriment' it has suffered through the acts of another." *Id.* at 826. The court emphasized that it rejected a narrow technical definition focusing on the distinction between law and equity. It also rejected a broader definition encompassing "any sum expended under sanction of law . . . . This [broader] definition includes the basic concepts of 'loss' or 'detriment' recognized in the statutory and dictionary definitions, but omits any requirement that the expenditure incurred as a result of such loss be 'compensation' provided to an aggrieved party." *Id.* at 826-27.

The *Taxpayers Watch* plaintiffs allege that the District Board members wasted public funds, and they ask in their First and Second Amended Complaints that the state court require the Board members to return those funds. Those funds include monies that were collected from the residents of the District, so unless they were returned the burden would fall on the taxpayers.[4] On its face, this requested relief satisfies all of the elements of the ordinary definition of damages: it constitutes compensation in money, albeit indirect, recovered by a party for loss or detriment. Plaintiffs have therefore satisfied their burden of showing that there is a potential for coverage under the policy. The burden thus shifts to Defendant to show there is no possibility that the *Taxpayers Watch*

---

[4] In response to the Board members' special interrogatory, the *Taxpayers Watch* plaintiffs stated that they "ask that said monies be returned to each of them, as ratepayers of Los Osos, in trust for the citizenry." SUF 20. The *Taxpayers Watch* plaintiffs do not make this request in their complaints (in the Second Amended Complaint they specifically request that the money be returned to the "coffers of the District" SAC ¶ 24), and, as AAIC points out, there is no reason to think that a state court would ever grant money to them personally. The Court will therefore proceed on the assumption that if any monies are ordered returned they will be returned to the public treasury, not directly to the *Taxpayers Watch* plaintiffs.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

claims are covered.

Defendant argues that the monetary remedy available under § 526a does not constitute "damages" because courts have not allowed funds to be recovered directly by plaintiff taxpayers under that statute. As one California court has noted with respect to a different taxpayer suit statute, "taxpayer actions themselves clearly do not seek to vindicate private rights as they do not authorize individual taxpayers to recovery money." *Cal. State Parks Found. v. Superior Court*, 58 Cal. Rptr. 3d. 715, 726 (Cal. Ct. App. 2007). It is clear, however, that the remedy allowing the recovery of funds under § 526a is meant primarily to protect members of the public from having their monies, paid out in taxes, mismanaged and wasted. "The purpose of this statute, which applies to citizen and corporate taxpayers alike, is to permit a large body of persons to challenge wasteful government action that otherwise would go unchallenged because of the standing requirement. . . . [T]he essence of a taxpayer action remains an illegal or wasteful expenditure of public funds or damage to public property." *Waste Mgmt. of Alameda County*, 94 Cal. Rptr. 2d at 752 (citing *Blair v. Pitchess*, 5 Cal. 3d 258 (Cal. 1971)). *See also Connerly v. State Pers. Bd.*, 112 Cal. Rptr. 2d 5, 17 (Cal. Ct. App. 2001) ("[T]axpayer suits provide a general citizen remedy for controlling illegal government activity."). Indeed, although § 526a actions do not result in recovered funds being transferred directly into the pockets of plaintiffs, only taxpayers may bring suits under the statute. Monetary awards under § 526a are less direct than money damages in more conventional civil suits, to be sure, but they nevertheless satisfy the elements of the ordinary definition of "damages."

Defendant also objects to Plaintiffs' reliance on the California Supreme Court's decision in *AIU Insurance Co. v. Superior Court*, 51 Cal. 3d 807 (1990), which held that remedies that might be called "restitution" in some technical contexts count as "damages" in the ordinary and popular sense of that term. That case concerned whether an insurer was obligated to provide coverage for cleanup and other costs incurred pursuant to a suit under the Comprehensive Environmental Response and Compensation and Liability Act (CERCLA), and related state and federal environmental laws. The policy included coverage for "damages," but the insurers contended that damages were not available under CERCLA and the other statutes, because they provided either for the reimbursement (or "restitution") of cleanup costs to government agencies, or for

Case 2:08-cv-01279-AHM-SS Document 41 Filed 11/12/08 Page 15 of 18 Page ID #:769

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

injunctions that the defendant remove contaminants. The California Supreme Court held that these remedies did constitute "damages" under the ordinary and popular meaning of that term. "Whatever technical distinctions we and other courts have drawn between restitution and compensatory damages in other contexts, in ordinary terms both concepts are within the definition of 'damages.'" *Id.* at 836. Thus, even if the damages sought by the *Taxpayers Watch* plaintiffs might in some contexts be called "restitution" because they allegedly reimburse to the taxpayers what is rightfully theirs, they are "damages" for the purpose of interpreting the insurance policy.

Defendant has failed to show that the term "damages" as used in its policy does not encompass the remedy sought by the *Taxpayers Watch* plaintiffs. The Court therefore holds that under the terms of AAIC's policy, it has a duty to defend Plaintiffs in the *Taxpayers Watch* suit.

### B. Damages Sought Under CCP § 526a May Be Insurable Under California Law

Defendant argues that even if it has a duty to defend under the terms of its policy, any monetary recovery under § 526a is uninsurable under California law. Defendant relies on *Bank of the West v. Superior Court*, in which the California Supreme Court reiterated the longstanding rule that "one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired. Such orders do not award 'damages' as that term is used in insurance policies." 2 Cal. 4th 1254, 1266 (Cal. 1992).

As the California Supreme Court explained in *Bank of the West* and in *AIU Insurance Company*, this "longstanding" policy concern applies when funds were wrongfully acquired by the insured or when the relief sought is punitive. *Id.* at 1268-70; *AIU Ins. Co.*, 51 Cal. 3d at 836-37. *Bank of the West* identified the leading case as *Jaffe v. Cranford Insurance Co.*, 214 Cal. Rptr. 567 (Cal. Ct. App. 1985). In *Jaffe*, the state court held that an insurer had no duty to defend its insured against criminal prosecution for fraudulently obtaining Medi-Cal payments because the insured had "wrongfully acquired" the funds. *Id.* at 570. In *Bank of the West* itself, the court held that insurance coverage was not available for disgorgement of money obtained by the insured bank through violations of California's Unfair Business Practices Act. *Bank of the West*, 2

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

Cal. 4th at 1266-70. There are obvious and compelling policy reasons for this rule: "When the law requires a wrongdoer to disgorge money or property acquired through a violation of the law, to permit the wrongdoer to transfer the cost of disgorgement to an insurer would eliminate the incentive for obeying the law. Otherwise, the wrongdoer would retain the proceeds of his illegal acts, merely shifting his loss to an insurer." *Id.* at 1269. These policy concerns do not necessarily apply, however, to all kinds of restitution. *AIU Ins. Co.*, 51 Cal. 3d at 836 (limiting the *Jaffe v. Cranford Ins. Co.* exclusion to cases where the relief sought is punitive).[5]

Defendant asserts that the rationale does apply to monetary damages awarded under CCP § 526. It argues:

> [T]he purpose of CCP § 526 [sic] is to enable citizens to restrain or enjoin illegal waste or expenditure of public funds. Leaving insurance carriers with the bill for such illegal conduct will not deter such conduct. It may even enhance its likelihood. Illustrative of this are the collaborative discovery efforts of the ratepayer plaintiffs and plaintiffs herein who were able to set aside their adversarial positions to swiftly prepare discovery designed to trigger insurance coverage.

Defendant overlooks the fact that the damages sought in the underlying case are neither punitive nor meant to restore to the *Taxpayers Watch* plaintiffs something wrongfully acquired by the Plaintiffs in this case. As described in the Factual Background section above, the *Taxpayers Watch* First Amended Complaint alleges only

---

[5] AAIC also asserts that "to the extent CCP § 526a is used to require public officials to personally restore monies to the public entity for waste, it has quasi punitive reach." Def.'s Opp. at 12. Defendant does not explain what it means by "quasi-punitive." Nor does it cite any authority that the damages remedy authorized under § 526a is at all punitive. Indeed, California courts *have* described the remedy as "remedial." *See Van Atta*, 27 Cal. 3d at 449-50 ("[I]n furtherance of the policy of liberally construing section 526a to foster its *remedial* purpose, our courts have permitted taxpayer suits for declaratory relief, damages and mandamus." (emphasis added) (citations omitted)) (overruled on other grounds). The Court therefore finds this argument unavailing.

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

that the insureds have wasted funds, elevated the costs of constructing the treatment facility, and wrongfully entered a settlement agreement with opponents of the facility. The Second Amended Complaint does assert that the insureds here benefited directly or indirectly from the settlement, because they allegedly had "personal ties to the organizations that benefitted from these settlements" and without the settlements they "or their organizations" would be personally liable for paying the attorneys' fees. SAC ¶ 13. These allegations are imprecise and ambiguous. Given that "[f]acts . . . insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage . . . add no weight to the scales," *Montrose*, 6 Cal. 4th at 300, a complaint's imprecise and ambiguous allegations cannot support an insurer's claim that it has no duty to defend. The Court therefore finds that SAC ¶ 13 should not be construed to mean that the individual Plaintiffs-insureds themselves "wrongfully acquired" the funds. Even if the Board members did not themselves wrongfully acquire funds, they may still be held liable under § 526a for wasting funds. This potential for monetary liability in the absence of personal benefit triggers AAIC's duty to defend.

### C. The Court Will Not Rule on the Bad Faith Claim

Plaintiffs' motion for partial summary judgment was brought only with respect to their breach of contract claim. Defendant nevertheless argues in its opposition to the motion that the Court should dismiss Plaintiffs' cause of action for breach of the duty of good faith and fair dealing because any mistake Defendant made about the scope of coverage was based on a genuine belief that no coverage applies. Plaintiffs reply that "AAIC has not appropriately teed-up the request in a noticed motion, and the parties have deferred discovery on the bad faith claims until after the District Court rules on Plaintiffs' motion for partial summary judgment on the duty to defend." Pl.'s Rep. at 14. This statement is supported by the Declaration of Eric J. Schindler, Plaintiffs' counsel of record. Schindler September 2, 2008 Decl. at ¶ 4. Defendant did not object to this assertion when it filed its objection to paragraph three of the same declaration.

The Court will not rule on the claim for breach of the duty of good faith until discovery has proceeded on that matter and Defendant or Plaintiffs bring a properly noticed motion.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-01279 AHM (SSx) | Date | November 12, 2008 |
|---|---|---|---|
| Title | THE LOS OSOS COMMUNITY SERVICES DISTRICT, *et al.* v. AMERICAN ALTERNATIVE INSURANCE CORPORATION | | |

## VI.   CONCLUSION

For the foregoing reasons, the Court holds that the underlying action potentially seek "damages" covered by the policy and insurable under California law, and therefore GRANTS Plaintiffs' motion for partial summary judgment.[6]

No hearing is necessary.  Fed. R. Civ. P. 78; L. R. 7-15.

                                                                    : 
                            Initials of Preparer            SMO

---

[6] Dkt. No. 25.